UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANNIE PRUITT, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 99-B-0213-S |
| BAPTIST HOME CARE SERVICES and BAPTIST HEALTH SYSTEM, Inc., | } |
| Defendants. | } |

## MEMORANDUM OPINION

Currently before the court is Defendants' Motion for Summary Judgment filed by Baptist Home Care Services ("BHCS") and Baptist Health System, Inc. ("BHS").[1] Plaintiff Annie Pruitt ("plaintiff" or "Pruitt") brought this action against defendants alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Upon consideration of the evidence, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion is due to be granted.

### I. FACTUAL SUMMARY

BHS employed plaintiff as a Medical Records Coordinator in the BHCS division in November of 1989. (PX 1.)[2] Plaintiff held this position through November 17, 1997, the date on which she took FMLA leave. (PX 2 at 10.) The job description for the position of Medical

---

[1] Collectively, defendants will be referred to as "defendants" or "Baptist."

[2] Plaintiff's Exhibits will be referred to as "PX," and defendants' exhibits will be referred to as "DX."

Records Coordinator states:

> GENERAL SUMMARY:
> Assists in maintaining medical records, referral intake and other duties related to accurate filing of patient's records. Analyzes medical records upon patient discharge for completeness and compliance with home health policies. Assumes responsibility for department management in the absence of Manager.

(DX 2 at Ex. 1.) The job description specifies that forty-five percent of the position requires standing and fifty percent requires walking. (*Id.*)

Plaintiff contends that she also served as Acting Manager from December of 1995 until her employment with defendants ended.[3] (PX 2 at 25-28; Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Br.") at 3.) Although no job description exists for this position, plaintiff testified that her duties as Acting Manager included: (1) completing performance appraisals on the medical records clerks; (2) ordering supplies; and (3) hearing complaints. (PX 2 at 25-28, 60.) Plaintiff stated that she delegated the majority of her duties as Medical Records Coordinator because of her role as Acting Manager. (PX 2 at 25-28, 71-72, 85-86; Pl.'s Br. at 6.)

In 1995, plaintiff began experiencing muscle spasms, diagnosed as fibromyalgia. (PX 2 at 13-14.) Plaintiff stated that she experiences a general dull pain at all times, although the pain is alleviated by medication. (*Id.* at 13-15, 29-30.) With this first "flare-up" of the disease, plaintiff was on sick leave for approximately seven months. (PX 2 at 15-16, 18.)

---

[3] Dell Chapman ("Chapman"), plaintiff's supervisor, testified that the only time plaintiff served as Acting Manager was in 1992, when Chapman was unable to work for six months due to a back injury. (PX 3 at 28-36, 38-39.)

2

Plaintiff had a second "flare-up" in September of 1997, which lasted until January of 1998. (PX 2 at 16.) Because of this "flare-up" and because of a kidney infection, plaintiff took leave from her job under the Family Medical Leave Act ("FMLA"). (DX 2 at 16-17, 31, 38, Ex. 2.) When plaintiff sought to return to work on November 17, 1997, her physician, Dr. P.A. Del Vecchio ("Del Vecchio"), provided BHS with a note and a certification stating that plaintiff was "severely restricted as to standing, walking, and rising from the seated position." (DX 2 at Ex. 2, 3, and 4; PX 2 at 35-37; PX 4.) Based on this restriction, Baptist's Human Resources department concluded that plaintiff was unable to perform the essential functions of her position as Medical Records Coordinator. (PX 2 at 10, 38; PX 3 at 17-18; PX 5 at 13-17.) Although plaintiff had already been on FMLA leave for two months, Baptist offered her additional FMLA leave, conditioned upon plaintiff's completion of the necessary paperwork. (PX 2 at 38-41; PX 5 at 17.)[4]

BHS found that the Certification of Health Care Provider ("the certification") provided by Del Vecchio was insufficient because it contained conflicting information stating that plaintiff's condition: (1) did not prevent her from performing work of any kind; (2) did not prevent her from performing any of the essential functions of her job; and (3) severely restricted her abilities to stand, walk, or rise from a seated position. (DX 2 at Ex. 2, 3, and 4; *see also* PX 2 at 39-41; PX 3 at 15-16; PX 5 at 16-17; DX 1 at Ex. B.) For this reason, on November 25, 1997, BHS

---

[4] Plaintiff contends that BHS forced her to take involuntary FMLA leave at this time, and that she felt as though she was being fired. (PX 2 at 53-55.) Plaintiff also contends that because she was serving as the Acting Manager, a position she stated that she had been performing since December of 1995, she could delegate much of the more difficult tasks such as pulling charts and boxing up files, and, thus, continue working with the restrictions placed upon her by Del Vecchio. (PX 2 at 71-72, 84-86; Pl.'s Br. at 5.)

notified plaintiff and Del Vecchio that BHS needed additional information pertaining to the certification. (DX 2 at Ex. 5.) BHS also asked Del Vecchio to review plaintiff's job description so that he could make a more accurate determination of plaintiff's limitations. (*Id.*) Neither Del Vecchio or plaintiff provided the requested information, and BHS again requested such information on December 21, 1997, and January 5, 1998. (DX 2 at 7, Ex. 6 and 7; DX 1 at ¶ 4, Ex. B.) Plaintiff submitted the necessary paperwork in mid-January of 1998. (Pruitt Dep. at Ex. 8.) At this time, plaintiff also requested an extension of her leave of absence. (*Id.*) Although plaintiff had exhausted all of her FMLA leave, Baptist granted plaintiff an extended medical leave until October 31, 1998. (*Id.*) Baptist informed plaintiff:

> During your extended medical leave, there is no guarantee of re-employment. Rather, you will be given preferential consideration for available jobs for which you are qualified. It is your obligation to notify us of your interests in a particular job: we will not consider you for an open position unless you notify us of your interest in that position. Please feel free to contact us concerning available positions.

(*Id.*) Plaintiff never contacted Baptist about coming back to work. (PX 2 at 44.)

Plaintiff filed a charge of discrimination with the EEOC on December 18, 1997, alleging that she had been discriminated against on the basis of a disability and that she had been unlawfully terminated from her position as a Medical Records Clerk. (PX 1.) She filed suit on January 29, 1999, under the ADA alleging that as of November 17, 1997, Baptist had failed to provide her with a reasonable accommodation in her position as Medical Records Coordinator and had refused to consider her for employment. On March 18, 1999, BHS sent plaintiff a letter stating, "[t]he Human Resources department has been notified that you have terminated your employment with Baptist Health System." (PX 6.)

## II. DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### B. Plaintiff's ADA Claim

The ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring,

5

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims. *Hilburn v. Murata Electronics North America,* 181 F.3d 1220, 1226 (11th Cir. 1999). In order to establish a prima facie case under the ADA, "a plaintiff must demonstrate that (1) he or she has a disability; (2) he or she is a qualified individual; and (3) he or she was subjected to unlawful discrimination as the result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996). If a plaintiff fails to do so, the employer is entitled to judgment as a matter of law. *Id.* at 915.

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the ADA, "disability" is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. §§ 12102(2)(A)-(C).

    **a.**   **Substantially Limiting Physical or Mental Impairment**

"[T]he term 'substantially limits' means '[u]nable to perform a major life activity that the average person in the general population can perform' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.'" *Hilburn*, 181 F. 3d at 1226 (quoting 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997)). "Major life activities are defined in the

[EEOC] regulations as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.* at 1226-27 (quoting 29 C.F.R. § 1630.2(i) (1997)).

A physical impairment alone is not necessarily a disability under the ADA. *Id.* at 1226. In determining whether an impairment "substantially limits" a major life activity, Department of Labor regulations implementing the ADA provide that the following factors should be considered: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2) (2000). In addition, according to the ADA's interpretive guidelines, temporary, minor injuries do not "substantially limit" a person's major life activities: "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. § 1630.2(j) App. (2000).

Plaintiff contends that her fibromyalgia rendered her disabled for purposes of the ADA in that the disease substantially impaired her major life activities of walking and standing. (Pl.'s Br. at 11.) The court is of the opinion that plaintiff's fibromyalgia is not severe enough to constitute a disability under the ADA. Plaintiff's condition is episodic in nature such that she suffers from a general dull muscle pain that occasionally "flares-up" into a more serious condition. (PX 2 at 17, 29-30.) Further, she testified that except for when she is experiencing a "flare-up," her pain can be controlled through the use of pain medication. (PX 2 at 15, 29-30; *see also* PX 2 at 79-80.) Plaintiff testified that when she came back to work in December of 1995: "I

7

still did a little bit of everything. Wherever I was needed, that's where I worked. Whatever I could do to help, that's what I did." (PX 2 at 28.) Although at times plaintiff's disease interfered with her ability to walk and stand throughout an entire work day, there is no evidence that she was substantially impaired in her ability to walk or stand. Plaintiff's work history proves that her condition merely interfered with her ability to perform a particular job and did not substantially limit her ability to obtain other satisfactory employment or to perform a class of jobs. Thus, plaintiff has not established that she has an impairment that substantially limits one or more of her major life activities.

### b. Regarded as Disabled

Plaintiff alleges that she was "regarded as" substantially impaired in the major life activities of walking, standing, and working. (*See* Pl.'s Br. at 11.) An individual may invoke this statutory definition of "regarded as" disabled by showing that he or she: (1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA. *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 n. 2 (11th Cir. 1998) (citing 29 C.F.R. § 1630.2(l)). In any case, "it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, ___, 119 S.Ct. 2139, 2150 (1999).

In addressing the major life activity of working, "the [EEOC] defines 'substantially limits' as: 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, ___, 119 S. Ct. 2133, 2138 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). To be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. *Id.*

Consequently, when a plaintiff claims that she is "regarded as" disabled as to the major life activity of working, the statutory phrase "substantially limits" requires the plaintiff to allege that she is regarded as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes. *Sutton*, 527 U.S. at ___, 119 S. Ct. at 2151; *see also Gordon*, 100 F.3d at 913 ("As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks.").

In this case, plaintiff contends that, as a result of the restrictions Del Vecchio placed on her because of her condition with fibromyalgia, defendant regarded plaintiff as being disabled. (*See* Pl.'s Br. at 1, 11.) Specifically, plaintiff argues that she "was clearly regarded as having a disability as she was treated as effectively disqualified from a broad class of jobs and thus impaired in the major life activity of walking or standing." (Pl.'s Br. at 11.) Plaintiff alleges that such discriminatory conduct occurred when she attempted to return to work on November 17, 1997, and was subsequently sent home on FMLA leave. (*See* Pl.'s Br. at 1, 4-6.) The court is of

the opinion that such conduct establishes that defendants regarded plaintiff as having problems that affected her ability to perform her particular job, but it fails to constitute evidence that she was perceived as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Murphy*, 527 U.S. at ___, 119 S.Ct. at 2138. Further, as to plaintiff's ability to walk and stand, "[w]here a defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, . . . a finding that plaintiff was regarded as disabled and, therefore, is entitled to the protections of the ADA, is inappropriate." *Hilburn,* 181 F.3d at 1230 (citations and quotations omitted). There is no evidence indicating that defendants viewed plaintiff's limitations erroneously. The court is of the opinion that plaintiff has not produced evidence on which a reasonable jury could conclude that defendants "regarded" plaintiff as having an impairment that substantially limited her major life activities.

### c. **Record of Disability**

Similarly, an alleged record of an impairment must be of an impairment that substantially limits a major life activity.[5] *Hilburn*, 181 F. 3d at 1228-29 (citing 29 C.F.R. § 1630.2(k)). The relevant regulation defines "record of impairment" to mean that an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 16320.2(k). "The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." *Hilburn,* 181 F.3d at 1229 (citations and quotations omitted). Under this standard,

---

[5] Plaintiff does not argue in her brief that she has a record of impairment, but the court will briefly address this issue.

Del Vecchio's return-to-work certification in 1997, stating that plaintiff could return to work, but was severely restricted in standing, walking, and rising from a seated position does not constitute a "record of impairment," especially in light of the fact that Del Vecchio also indicated that plaintiff's condition did not prevent her from performing work of any kind and it did not prevent her from performing any of the essential functions of her job. (*See* Dx 2 at Ex. 2, 3, and 4.) Consequently, the court is of the opinion that there is no record of a substantially limiting impairment as defined by the ADA.

### III. CONCLUSION

Because plaintiff does not have a physical or mental impairment that substantially limits one or more of her major life activities, has no record of such an impairment, and was not regarded as having such an impairment, she has failed to establish a prima facie case of disability discrimination under the ADA. Thus, the court is of the opinion that Defendants' Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this ___ day of September, 2000.

**SHARON LOVELACE BLACKBURN**
United States District Judge

11